## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SPADA PROPERTIES, INC., an Oregon corporation dba UNITED SALAD CO., | Case No. 3:13-cv-01760-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| UNIFIED GROCERS, INC., a California corporation, | |
| Defendant. | |

David P. Weiner and Sanford R. Landress, GREENE & MARKLEY, P.C., 1515 SW Fifth Avenue, Suite 600, Portland, OR 97201. Of Attorneys for Plaintiff.

Jeremy D. Sacks, Brandy A. Sargent, and Stephen H. Galloway, STOEL RIVES LLP, 900 SW Fifth Avenue, Suite 2600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Spada Properties, Inc., doing business as United Salad Co. ("USC"), brings this lawsuit against Defendant Unified Grocers, Inc. ("Unified"), alleging claims regarding the bankruptcy of a "Food 4 Less" grocery store to which both USC and Unified supplied groceries. USC asserts two claims: (1) violation of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. §§ 499b, 499e; and (2) money had and received. Unified raises ten

PAGE 1 – OPINION AND ORDER

affirmative defenses: (1) waiver; (2) statute of limitations; (3) laches; (4) failure to state a claim; (5) bona fide purchaser; (6) good faith beneficiary pursuant to Or. Rev. Stat. § 130.855 and Uniform Trust Code § 1012; (7) unclean hands; (8) failure to mitigate; (9) estoppel and course of dealings; and (10) consent. USC has moved for summary judgment on all claims and all defenses.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Congress enacted PACA in 1930 "in order to provide growers and sellers of agricultural commodities with 'a self-help tool . . . enable[ing] them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables.'" *D.H. Rothman & Co. v. Korea Commercial Bank of New York*, 411 F.3d

90, 93 (2d Cir. 2005) (alterations in original) (citing *Regulations Under the Perishable Agricultural Commodities Act; Addition of Provisions to Effect a Statutory Trust*, Final Rule, 49 Fed. Reg. 45735, 45737 (USDA Nov. 20, 1984)). PACA requires purchasers of perishable produce to provide full and prompt payment to produce sellers. 7 U.S.C. § 499b(4). As described more fully below, § 499e(c)(2) of PACA creates a non-segregated, floating trust for the benefit of the seller of perishable commodities. The trust comes into existence when the produce is delivered, and remains in effect until payment is received. *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 281 (9th Cir. 1997). PACA trust rights are superior to the rights of secured creditors, which can in certain circumstances be required to disgorge any PACA trust proceeds received. *See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir. 1995); *Consumer Produce Co. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1381 (3d Cir. 1994).

USC is an Oregon corporation that sells and distributes fresh fruit and produce and is licensed by the Secretary of Agriculture under PACA. For almost 20 years, USC was the primary wholesale produce supplier for Food Ventures 87, Inc. doing business as "Food 4 Less" ("Food 4 Less"). This case, however, deals only with produce sales made between July 21, 2011 and April 24, 2012.

Unified is a secured seller of non-PACA qualified food and also supplies groceries to Food 4 Less. As part of the initial purchase agreement between Food 4 Less and Unified, Food 4 Less authorized Unified to withdraw automatic payments from Food 4 Less' bank accounts. During the period at issue, Unified received payments from Food 4 Less totaling $8,099,459.16. These payments were made through automatic withdrawals.

Between July 21, 2011 and April 24, 2012, USC sold fresh fruit and produce to Food 4 Less on terms requiring payment within ten days after invoice. The invoice date was also the date of delivery. Each invoice sent by USC to Food 4 Less included the following statement:

> The perishable agricultural commodities listed on this statement are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7. U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sale of these commodities until full payment is received.

Spada Decl. ¶ 8, Dkt. 16.

Although the formal terms included in USC's invoices to Food 4 Less required payment in full within ten days of delivery, in the course of practice, USC allowed Food 4 Less to pay within 30 days of delivery. At some unspecified point, Food 4 Less began to pay even later than 30 days after delivery. USC decided not to commence collection actions against Food 4 Less because of its past experiences with Food 4 Less and the reassurances made to USC by the owners of Food 4 Less.

After Food 4 Less began to experience financial difficulties, it got further and further behind on payments owed to USC. In January of 2009, Food 4 Less was five months behind on payments. Ernest Spada, the owner of USC, and Michael Leech, the owner of the Food 4 Less, talked frequently about Food 4 Less' growing inability to pay USC. In July of 2009, USC asked for and received from Food 4 Less for a promissory note for $500,000. USC used the payments on the $500,000 promissory note to reduce a portion of Food 4 Less' past due accounts. The note required Food 4 Less to pay $22,000 a month to USC for two years. This covered both the principal and interest due on the $500,000 note. The note was paid off by August 2011, at which time Food 4 Less had fallen eight months behind on its produce payments. Leech offered USC a security agreement on his personal boathouse, worth approximately $180,000, which USC

PAGE 4 – OPINION AND ORDER

accepted. In April 2012, USC started selling produce to Food 4 Less on a cash-on-delivery basis only.

On or about April 30, 2013, Food 4 Less filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The bankruptcy case was closed as a "no asset" case without any distribution to creditors on or about August 21, 2013. USC alleges that as of January 28, 2013, Food 4 Less still owed USC the total principal amount of $830,711.13.

## DISCUSSION

### A.  The Perishable Agricultural Commodities Act

Produce dealers violate PACA if they do not promptly pay in full for any perishable commodity purchased in interstate commerce. 7 U.S.C. § 499b(4); *see also Sunkist Growers, Inc.*, 104 F.3d at 282. Failure promptly to pay in full exposes the violating buyer to civil liability in favor of the seller. 7 U.S.C. § 499e. In 1984, Congress amended PACA to add an additional protection for produce suppliers—a non-segregated, floating trust that gives suppliers a security interest in the produce and its proceeds and makes the security interest superior to the claims of the buyer's other secured creditors. *See* An Act to Amend the Perishable Agricultural Commodities Act, 1930, Pub. L. No. 98-273, 98 Stat. 165 (codified as amended 7 U.S.C. § 499e(c) (1984)); 7 C.F.R. § 46.46(b) (2011). As the Ninth Circuit explained:

> The PACA provisions provide for the establishment of a nonsegregated trust under which a produce dealer holds its produce-related assets as a fiduciary until full payment is made to the seller. The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received.

*In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991) (citations omitted).

In order to preserve its PACA trust rights, however, a seller must comply with the notice provisions of 7 U.S.C. §§ 499e(c)(3) or (4). Subsection (4) provides in relevant part:

> In addition to the methods of preserving the benefits of the trust
> specified in paragraph (3), a licensee may use ordinary and usual
> billing or invoice statements to provide notice of the licensee's
> intent to preserve the trust. The bill or invoice statement must
> include the information required by the last sentence of paragraph
> (3) and contain on the face of the statement the following: "The
> perishable agricultural commodities listed on this invoice are sold
> subject to the statutory trust authorized by section 5(c) of the
> Perishable Agricultural Commodities Act, 1930 (7 U.S.C.
> 499e(c)). The seller of these commodities retains a trust claim over
> these commodities, all inventories of food or other products
> derived from these commodities, and any receivables or proceeds
> from the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4).[1]

The Secretary of Agriculture's regulations implementing PACA provide further detail regarding the preservation of PACA trust rights. Sellers are required to have a prompt payment agreement with buyers to preserve PACA trust rights. The applicable regulations, specifically, paragraph (e)(1) of § 46.46, provide the ten-day statutory default for prompt accounting and prompt payments and explains that parties that agree to other payment schedules must reduce the agreement to writing. 7 C.F.R. § 46.46(e)(1) (defining prompt payment as ten days after delivery in most instances). Paragraph (e)(2) of § 46.46 states that the maximum time for payment after shipment that the seller and buyer can agree to "*prior to the transaction*, and still be eligible for benefits under the trust is 30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(e)(2) (emphasis added).

Despite the somewhat strict time limitations for payment schedules, the regulations also provide that a seller's acceptance of partial payments or agreement to payment schedules after a buyer's default will not disqualify a seller from being able to exercise its PACA trust rights:

---

[1] A previous version of PACA also required that the seller provide notice to the Secretary of Agriculture in order preserve trust rights. This requirement was eliminated in the 1995 amendments. *See* An Act to Amend the Perishable Agricultural Commodities Act, 1930, Pub. L. No. 104-48, §§ 6, 8(b), 109 Stat. 427, 429.

>If there is a default in payment as defined in § 46.46(a)(3), the seller, supplier, or agent who has met the eligibility requirements of paragraphs (e)(1) and (2) of this section will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment.

7 C.F.R. § 46.46(3)(3). Therefore, the regulations distinguish between pre-default agreements and post-default agreements.

Unified concedes that USC meets all the requirements of PACA trust protection except for two.[2] Unified argues that USC does not qualify for PACA protection because the significant and long-term extensions of credit to Food 4 Less undermined (1) the purpose of the PACA; and (2) the prompt pre-default payment requirements of 7 C.F.R. §§ 46.46(e)(1) and (2). Regarding its purpose argument, Unified relies upon a Second Circuit case, *American Banana Co., v. Republic National Bank of New York, N.A.*, 362 F.3d 33, 38 (2d Cir. 2004), for the proposition that PACA establishes "strict eligibility requirements" and that to be eligible for PACA trust rights sellers are "required to extend only short-term credit, and, in the event of defaults, promptly to pursue administrative and judicial remedies." *Id.* (citing H.R. 98-542, 98th Cong., at 6-7 (1983), other citations omitted). Noting that Congress enacted the prompt payment requirements to protect the market as a whole, not just produce sellers, Unified argues, courts "would not want to reward the wholesalers who helped create such a mess by then giving them [protection under PACA]." *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 671 (7th Cir. 2002).

---

[2] The elements of a PACA trust claim are: (1) plaintiff is a PACA licensee; (2) plaintiff sold perishable agricultural commodities; (3) the buyer was subject to the trust provisions of PACA; (4) the perishable agricultural commodities traveled through interstate commerce; (5) plaintiff preserved their PACA trust rights by providing requisite notice to the buyer; and (6) the buyer has not made full payment on at least some of the produce provided by plaintiff. *See* 7 C.F.R. § 46.46; *Belleza Fruit, Inc. v. Suffolk Banana Co.*, 2012 WL 2675066, at *8 (E.D.N.Y. July 5, 2012).

PAGE 7 – OPINION AND ORDER

In response, USC cites 7 C.F.R. § 46.46(e)(3), the regulation interpreting the PACA trust requirements. This regulation provides that if there is a default, sellers "will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting partial payment." Under the formal terms of the payment agreements between USC and Food 4 Less, payment was required within ten days of delivery. USC argues that because of this, all of the long term repayment agreements between USC and Food 4 Less occurred after defaults by Food 4 Less, and therefore, USC did not "forfeit eligibility."

The tension between the cases cited by Unified, which were issued between 2002 and 2004, and the regulation cited by USC, is explained by amendments made to the regulations in 2011. The 2011 amendments were accompanied by a Department of Agriculture notice of rulemaking titled "Perishable Agricultural Commodities Act: Impact of Post-Default Agreements on Trust Protection Eligibility." 76 F.R. 20217-01.[3] In its 2011 rulemaking, the Department of Agriculture ("USDA") stated:

> (USDA) is amending the regulations under the Perishable Agricultural Commodities Act (PACA) to allow, if there is a default in payment as defined in the regulations, a seller, supplier, or agent who has met the PACA trust eligibility requirements to enter into a scheduled agreement for payment of the past due amount without foregoing its trust eligibility. USDA is also amending 7 CFR 46.46(e)(2) by adding the words "prior to the transaction." This change clarifies that the 30-day maximum time

---

[3] The Court applies *Auer* deference to an agency's interpretation of its own ambiguous regulations. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Peterson v. ConAgra Foods Inc.*, 2014 WL 3741853, at *3 (9th Cir. July 29, 2014) ("[W]here an agency interprets its own regulation, . . . its interpretation of an ambiguous regulation is controlling under *Auer* unless plainly erroneous or inconsistent with the regulations." (citations and quotation marks omitted)); *see also Hillsborough Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 718 (1984) (noting that the preamble to a rulemaking is a way that "agencies normally address problems in a detailed manner"). Because the USDA's interpretation of its PACA regulations is not plainly erroneous or inconsistent, it is controlling. *But see Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1339 (2013) (Scalia, J., concurring in part dissenting in part) (urging rejection of the *Auer* doctrine).

period for payment to which a seller can agree and still qualify for
coverage under the trust refers to pre-transaction agreements.

*Id.* at 20217.

Citing *American Banana* and *Patterson* Foods, the USDA further explained that in recent years "several federal courts have invalidated the trust rights of unpaid creditors because these creditors agreed . . . after default on payment, to accept payments over time from financially troubled buyers," based on interpretations of 7 C.F.R. § 46.46(e)(2). USDA disagreed with these judicial interpretations of the statute and regulations, stating, "[i]t is our interpretation that § 46.46(e)(2), like paragraph (e)(1) of the regulations . . . addresses pre-transaction agreements only." *Id.* (citations omitted). In explaining the amendment, the USDA emphasized the broad trust rights that PACA provides:

> In the context of the PACA trust, the right to make a claim against the trust are vested in the seller, supplier, or agent who has met the eligibility requirements of paragraph (e)(1) and (e)(2) of § 46.46. The seller, supplier, or agent remains a beneficiary of the PACA trust until the debt owed is paid in full as stated in section 5(c)(4) of the statute. An agreement to pay the antecedent debt in installments is not considered payment in full. Thus, we do not believe that a post-default payment agreement should constitute a waiver of a seller's previously perfected trust rights.

*Id.* at 20217-18. This rulemaking demonstrates that any post-default agreement between USC and Food 4 Less does not cause USC to "forfeit eligibility under the trust," and would not be against the purpose of the statute. *See* 7 C.F.R. § 46.46(e)(3); *see also* 76 F.R. 20217-01.[4]

Unified next argues that USC's extended payment agreements with Food 4 Less were pre-default agreements. USC responds that the written agreement between USC and Food 4 Less

---

[4] The Court notes, however, that this new rule regarding post-default payments does not apply retroactively. *See DiMare Homestead, Inc. v. Alphas Co. of New York, Inc.*, 2012 WL 1155133, at *10 n.4 (S.D.N.Y. April 5, 2012).

stated clearly that payment was due within ten days of delivery. Therefore, USC argues, the pre-default agreements between USC and Food 4 Less meet the requirements of (e)(1) and (e)(2).

It is clear from the record that the written pre-default agreements between USC and Food 4 Less required payment within ten days of delivery. It is also clear that USC informally allowed Food 4 Less to pay up to 30 days after delivery in the "course of dealing." This agreement for payment up to 30 days after payment does not disqualify USC from PACA trust protection because it is within the 30 day limit set by § 46.46(e)(2). The question, then, is whether USC and Food 4 Less agreed that payments could be made after the 30 day deadline allowed by § 46.46(e)(2).

USC asserts that there was not an agreement allowing Food 4 Less to pay more than 30 days after delivery. Unified counters that the record of chronic late payments, which made Food 4 Less significantly more than 30 days behind on payments for years at a time, along with the fact that USC never commenced enforcement actions against Food 4 Less for violating PACA, create an inference that there was a pre-default agreement between USC and Food 4 Less for payment after 30 days.

USC also argues that even if there had been an agreement allowing for payment after the 30-day deadline, this agreement would be unenforceable because it was not in writing. *See A&J Produce Corp. v. CIT Grp./Factoring, Inc.*, 829 F. Supp. 651, 655 (1993) (holding that unless there is a written agreement, suppliers retain the right to demand payment within ten days and seek trust protection under PACA), *affirmed in relevant part by Endico Potatoes, Inc.*, 67 F.3d at 1064); *see also Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 782 (8th Cir.1991).

 In its supplemental briefing after oral argument, Unified responds that pre-default oral agreements that allow for payment beyond the 30-day limit violate PACA. Unified cites the text

of § 46.46(e)(2), which provides: "The maximum time for payment for a shipment to which a seller, supplier, or agent can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days . . . ." Although § 46.46 (e)(1) includes a writing requirement (stating that all non-ten-day agreements must be made in writing), it does not undercut § 46.46(e)(2) in the context of oral agreements. Rather, § 46.46(e)(2), which is explicitly directed towards *sellers'* PACA rights, requires that sellers not enter into pre-default agreements that allow for payment beyond 30 days after delivery. In other words, § 46.46(e)(1) is directed towards the enforceability of alternative agreements for buyers, and § 46.46(e)(2) is directed at the protection of PACA trust rights for sellers.

A district court in the Southern District of New York provided reasoning that is consistent with Unified's interpretation of the PACA regulations. In *A&J Produce Corp. v. City Produce Operating Corp.*, the court denied the plaintiff's motion for summary judgment under similar circumstances to the case at bar, holding that the parties' course of dealings created a question of fact as to whether the plaintiff had agreed to payment terms in violation of PACA. The court noted that if the factfinder concluded that there was a course of dealings or oral agreement "between the parties by which plaintiff agreed to accept payment more than 30 days after receipt of produce," then that agreement "would appear to remove plaintiff from the protections afforded by a PACA trust." 2011WL 6780614, at *5 (S.D.N.Y. Dec. 23, 2011). The court interpreted the 2011 amendments to 7 C.F.R. § 46.46(e) as merely clarifying that PACA trust protection may only be lost by *pre*-transaction agreements to extend payment beyond 30 days. The Court finds this reasoning persuasive. Particularly considering that § 46.46(e)(2), which is directed explicitly at sellers, does not mention anything about a writing requirement, but instead states clearly that the "maximum time for payment for a shipment to which a seller . . .

can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days . . . ." 7 C.F.R. § 46.46(e)(2).

For these reasons, there is an issue of fact as to whether USC forfeited its PACA trust rights by entering into a pre-default agreement to allow payment beyond 30 days. Therefore, the Court denies USC's motion for summary judgment on USC's PACA trust claim.

## B.  Money Had and Received

USC's second claim is for money had and received. A claim for money had and received is based on the principle that a person or entity should not be unjustly enriched at the expense of another. *Hogan v. Aluminum Lock Shingle Corp.*, 214 Or. 218, 225 (1958). The elements are: (1) the defendant has received money, that (2) in equity and good conscience should be paid over to the plaintiff. *Id.* Unified agrees in its response brief that "USC's second claim depends on USC's success on the PACA claim." Therefore, for the same reasons that there is an issue of fact as to the PACA trust violation claim, there is also an issue of fact regarding the claim for money had and received.

## C.  Affirmative Defenses

Unified asserts ten affirmative defenses. USC moves for summary judgment against all ten. As a general matter, courts "apply general trust principles to questions involving the PACA trust, unless those principles directly conflict with the PACA." *Boulder Fruit Express & Heger Organic Farm Sales v. Transp. Factoring, Inc.*, 251 F.3d 1268, 1271 (9th Cir. 2001). Thus, "third-party recipients of trust funds . . . are not automatically liable if a plaintiff is able to establish a predicate breach on the part of a PACA trustee." *E. Armata, Inc. v. Korea Commercial Bank of New York*, 367 F.3d 123, 129 n.7 (2d Cir. 2004). Instead, under general trust principles, "a breach of trust by the trustee is a necessary but not sufficient condition for a third-party transferee's liability to trust beneficiaries." *Id.* Third parties, like Unified, "have

available to them under PACA all the traditional defenses to liability that are available under general trust law." *Id.*

Unified appears to concede the inapplicability of its affirmative defenses "Estoppel and Course of Dealings" and "Failure to State a Claim." The Court addresses the remaining affirmative defenses in turn.

### 1. Bona Fide Purchaser, and Good Faith Beneficiary under Or. Rev. Stat. § 130.855, and Uniform Trust Code § 1012

A third party that receives trust assets is a bona fide purchaser[5] if the trust assets were taken for value and without notice of the breach of trust. *Endico Potatoes,* 67 F.3d at 1068 (quoting *Restatement (Second) of Trusts* § 284(1)); *Consumer Produce*, 16 F.3d at 1381. "A third-party transferee may escape liability, therefore, if it: (i) gave value for the trust property *and* (ii) had no actual or constructive notice of the breach of trust." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 615 (2d Cir. 1998) (emphasis in original). The burden of proof to establish the protected status of a bona fide purchaser rests with the third party transferee. *Id.* (citing *Oscar Gruss & Son v. First State Bank,* 582 F.2d 424, 432 (7th Cir. 1978) and *Natural Resources, Inc. v. Wineberg*, 349 F.2d 685, 688 n.8 (9th Cir. 1965)).

Unified argues that the direct withdrawals that it received every month from Food 4 Less as payment for the groceries that Unified provided were received "for value." The Court agrees. Weekly payments for groceries is a payment of money for value. Moreover, assets are "for value" if they are transferred in the ordinary course of business. *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999-1000 (11th Cir. 1997). Here, Food 4 Less had been paying Unified for groceries in the same manner every week since 2007. Moreover, Food 4 Less did not file for

---

[5] Despite the fact that Unified is not literally a "purchaser" in this case, the Court will use the "bona fide purchaser" term because it has been consistently used in the case law regarding PACA and third party recipients of trust assets.

bankruptcy until 2013, and thus Unified did not transfer money from Food 4 Less during the course of a bankruptcy proceeding. Based on this evidence, the Court finds that assets were transferred in the ordinary course of business and were thus "for value."

Unified next argues that it had no knowledge, actual or constructive, that Food 4 Less was in breach of its trust. There is no evidence in the record of actual knowledge. USC relies on two pieces of evidence to argue that Unified had constructive knowledge: (1) Food 4 Less' fourth-quarter 2011 balance sheet, of which Unified had possession according to USC; and (2) a conversation between Leech and Ray Van Wetten (Unified's executive director of Oregon sales) in March 2012 in which Leech told Van Wetten that Leech was trying to sell Food 4 Less. On both these points, however, there is a dispute of material fact.

First, regarding the balance sheet, Leech testified that he had no idea when the balance sheet was sent to Unified, and the balance sheet does not break out the specific amounts owed to each vendor. Moreover, Van Wetten stated in his declaration that he did not know how much Food 4 Less owed USC until after USC filed this suit against Unified. Therefore, there are facts in the record to create a dispute as to whether or not the balance sheet gave Unified constructive knowledge of the breach of trust. *See Albee Tomato*, 155 F.3d at 615-16 (holding that a credit report showing a debt to a PACA seller was not enough to establish constructive knowledge on summary judgment).

Second, regarding the conversation between Leech and Van Wetten, Unified disputes that Leech ever told Van Wetten specifically how much Food 4 Less owed to USC. Van Wetten states that in the March 2012 conversation with Leech, Leech only generally referenced that USC was one of Food 4 Less' creditors. This dispute creates a genuine dispute of material fact

PAGE 14 – OPINION AND ORDER

for the factfinder regarding whether the March 2012 conversation is enough to establish

constructive knowledge.

USC's final argument is that Unified cannot be a bona fide purchaser because it had a

duty of inquiry to find out whether the money in Food 4 Less' account was PACA trust money.

Federal courts look to the *Restatement of Trusts* to provide general principals of trust law. *See*

*Transportation Factoring*, 251 F.3d at 1271; *see also Day v. Apoliona*, 616 F.3d 918, 926 (9th

Cir. 2010). USC cites *C.H. Robinson*, for the proposition that a third-party transferee of PACA

trust funds cannot be a bona fide purchaser if it failed to satisfy a duty of inquiry. 952 F.2d 1311,

1315 n.4 (11th Cir. 1992) ("It seems more accurate to say that a person has notice of a breach of

trust when he has actual knowledge of the breach of when he has knowledge of such facts that he

should ascertain by inquiry whether the trustee is committing a breach of trust."). USC argues

that because Unified did not perform any inquiry into whether Food 4 Less had breached the

PACA trust, Unified cannot be a bona fide purchaser.

Unified responds that *C.H. Robinson* based its reasoning on the *Restatement (Second) of*

*Trusts*, and that the more recent *Restatement (Third) of Trusts*, published after the *C.H. Robinson*

decision, removes the duty of inquiry for third-party transferees. Comment d to § 108 of the

*Restatement (Third) of Trusts* provides:

> On the modernized rule of § 108(3) that third parties have no duty
> to inquire into the extent or exercise of the trustee's powers or the
> application of assets delivered to the trustee, see Uniform Trust
> Code § 1012(b) and (c), and the accompanying commentary. See
> also *Scott and Ascher on Trusts,* supra, § 30.6.6 (p. 2128): "It
> seems plainly inappropriate . . . to compel third parties to supervise
> the fiduciary's conduct and to hold them liable for failing to do
> so."

*Restatement (Third) of Trusts*, § 108, com. d. Because the duty of inquiry no longer applies to

third-party transferees, and because there is an issue of fact as to whether Unified had

constructive knowledge of the breach of trust, Unified argues that there is an issue of fact as to whether Unified was a bona fide purchaser.

USC admits that the *Restatement (Third) of Trusts* no longer contains a duty of inquiry for third-party transferees, but argues that the duty of inquiry still exists in the *Restatement (Third) of Restitution and Unjust Enrichment*. In the section discussing the defense to restitution of "bona fide payee," the *Restatement (Third) of Restitution* defines when a person "has reason to know a fact":

> A person has reason to know a fact if
>
> (a) the person has received an effective notification of the fact;
>
> (b) knowledge of the fact is imputed to the person by statute (including provisions for notice by filing or recording) or by other law (including principles of agency); or
>
> (c) other facts known to the person would make it reasonable to infer the existence of the fact, *or prudent to conduct further inquiry that would reveal it*.

*Restatement (Third) of Restitution and Unjust Enrichment* § 69(3) (2011) (emphasis added). Although the *Restatement (Third) of Restitution* seems to provide a duty of inquiry for bona fide payees, the Court is not persuaded that the *Restatement (Third) of Restitution* applies to the circumstances of this case. As that *Restatement* provides, "Liability in restitution derives from the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant." *Id.* at § 1, com. a. The benefit that Unified received from Food 4 Less (money) was in exchange for the groceries that Unified provided to Food 4 Less. The Court notes that USC did not provide, and the Court did not discover, any cases applying the *Restatement (Third) of Restitution and Unjust Enrichment* to the PACA context. Therefore, Unified has not received unjust enrichment as it is defined in this

*Restatement*.[6] Moreover, the *Restatement (Third) of Trusts* appears deliberately to remove the duty of inquiry for third-party transferees. *Restatement (Third) Trusts*, § 108, comm. d ("On the modernized rule of § 108(3) that third parties have no duty to inquire into the extent or exercise of the trustee's powers or the application of assets delivered to the trustee.").

Viewing the evidence in the light most favorable to the non-moving party, Unified has presented evidence that creates a genuine dispute as to a material fact regarding whether Unified is a bona fide purchaser or a good faith beneficiary. Therefore, the Court denies USC's motion for summary judgment on these two affirmative defenses.

**2.  Statute of Limitations**

Generally, "[d]etermining the statute of limitations period for activity governed by a federal statute is a question of federal law." *Wels-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 422 (3d Cir. 2005). When, however, "federal statutes fail to provide any limitations period for the cause of action they create," courts are left to "borrow a period, generally from state law, to limit these claims." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33 (1995). Both parties agree that the proper statute of limitations for the money had and received claim is six years. The parties disagree, however, as to whether the PACA claim should be governed by a two-year statute of limitations or a six-year statute of limitations. USC argues that the two-year statute of limitations of a claim for conversion is most analogous, and Unified argues that the six-year statute of limitations of a claim for breach of fiduciary duty is most analogous. Because both parties agree that the six-year statute of limitations applies to the money had and received claim and that the

_____

[6] Even if the *Restatement of Restitution and Unjust Enrichment* did apply, there would be an issue of fact as to whether the duty to inquire was triggered. Section 69(3) only applies when "other facts known to the person would make it reasonable to infer the existence of the fact, or prudent to conduct further inquiry that would reveal it." *Id*. at § 69. In this case, there is evidence in the record sufficient to create a question of fact as to whether the duty was triggered.

money had and received claim succeeds or fails based on the success or failure of the PACA claim, the Court does not need to reach the issue of which statute of limitations should apply to the PACA claim.[7]

The remaining issue to be decided is when the statute of limitations should begin to run. USC argues that it should begin to run in July 2011, because USC has limited its claims to the wrongful acts that occurred between July 2011 and April 2012. Unified argues that the statute of limitations began to run well before July 2011, when USC first became aware of Food 4 Less' violation of PACA. Unified notes that in July 2011, Food 4 Less was already eight months behind on payments to USC, and by April 2012, Food 4 Less was a total of nine and a half months behind on payments to USC. Thus, Food 4 Less already owed USC a significant portion of the money that USC now seeks from Unified before July 2011.

In *Wels-Buy Services*, the court addressed the statute of limitations in the context of a PACA claim against the officer of a violating PACA buyer. 411 F.3d at 422-23. The court found that the statute of limitations started to run when the seller knew the buyer was making late payments in violation of PACA.[8] *Id.* The court concluded that "once [the buyer] and its officers failed to pay Sellers for the good received, Sellers were on notice that the trustees were in breach of their fiduciary duties." *Id.* Moreover, the court expressed that the "unique nature of the PACA trust" does not change the analysis:

---

[7] Even if the Court were to reach this issue, the Court would find that the breach of fiduciary duty statute is more analogous to the PACA claim, so a six-year statute of limitations would still apply. Under PACA, it is Food 4 Less' bad actions not Unified's that are relevant. Therefore, a claim for conversion is not analogous.

[8] The court also reasoned that the continuing violation theory of accrual did not apply in the PACA context because "the focus on the continuing violations doctrine is on affirmative acts of the defendants . . . not continual ill effects from an original violation." *Id.* at 423.

> We recognize that the trust created by PACA exists until a seller is
> paid, 7 U.S.C. § 499e(c)(2), and participants who preserve their
> rights to benefits . . . remain beneficiaries until they are paid in
> full, 7 C.F.R. § 46.46(c)(2). However, when Sellers are not suing
> to enforce the trust obligations or to preserve their shares of the
> trust *res*, but instead are suing the trustee in tort for damages
> resulting from a breach of his fiduciary duties, we believe that the
> statute of limitations must accrue from the time that the trustee
> openly repudiates those duties.

*Id.* (quotations marks omitted).

The Court finds the reasoning expressed in *Wels-Buy Services* persuasive. For these reasons, the statute of limitations began to run when USC knew that Food 4 Less was violating PACA. USC moved for summary judgment on the statute of limitations affirmative defense based solely on the contention that the statute of limitations began to run from the date designated in this lawsuit, July 21, 2011. Because Unified did not cross move for summary judgment on this affirmative defense and because neither party has briefed the issue of when USC became aware that Food 4 Less was violating PACA, the Court does not reach whether there is a dispute of fact as to when the statute of limitations began to run, but rather denies summary judgment on this point as a matter of law.

### 3.  Laches

To prevail on a laches defense, the Defendant must prove:

> (1) plaintiff[] delayed asserting [its] claim for an unreasonable
> length of time, (2) with full knowledge of all relevant facts (and
> laches does not start to run until such knowledge is shown to
> exist), (3) resulting in such substantial prejudice to defendant[] that
> it would be inequitable for the court to grant relief.

*Mattson v. Commercial Credit Bus. Loans, Inc.*, 301 Or. 407, 419 (1986). For the same reasons discussed regarding the statute of limitations defense, Unified has demonstrated an issue of fact as to the first two elements of the laches defense. Unified has also demonstrated an issue of fact as to the third element of prejudice. If Unified were to have known that Food 4 Less was

PAGE 19 – OPINION AND ORDER

breaching its fiduciary duty to USC as a trustee, Unified could have made the decision to stop

selling groceries to Food 4 Less years ago. Therefore, there is an issue of fact as to all three

elements of the laches defense, and USC motion for summary judgment is denied on this

affirmative defense.

### 4.   Waiver, Unclean Hands, Failure to Mitigate, and Consent

Although Unified's arguments regarding the affirmative defenses of waiver, unclean

hands, failure to mitigate, and consent go to whether USC complied with the PACA regulations

and whether the statute of limitations began to run well before 2011, standing alone, these

affirmative defenses cannot be successful. The regulations to PACA make clear that the seller is

allowed to accept partial payment and payment agreements from buyers after default. *See* 76

F.R. 20217-01. Moreover, the statute makes clear that the seller maintains PACA trust rights

until it is paid in full. *See* 7 U.S.C. § 499e. The USDA explicitly mentions that a wavier

affirmative defense, and other similar affirmative defenses, should not apply in the PACA

context. 76 F.R. 20217-01 ("This interpretation of our regulations is consistent with the

Secretary's unwillingness to impute a waiver of trust rights as illustrated in the policies

established by the Secretary and upheld by the courts in the context of the trust provisions of the

Packers and Stockyards Act, after which the PACA trust provisions are largely modeled.").

Therefore, the Court grants summary judgment on these four affirmative defenses.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART USC's motion for summary

judgment (Dkt. 14). With respect to Unified's affirmative defenses of estoppel and course of

dealings, failure to state a claim, waiver, unclean hands, failure to mitigate, and consent, the

motion is granted. With respect to USC's PACA claim, and money had and received claim, and

the affirmative defenses of bona fide purchaser, good faith beneficiary, statute of limitations, and

laches, the motion is denied.


**IT IS SO ORDERED**.

DATED this 15th day of August, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
